UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEON KENNEDY,
           Plaintiff

                                   Case No. 5:17-cv-11867

v.                               District Judge John Corbett O'Meara
                               Magistrate Judge Anthony P. Patti

ALLSTATE INSURANCE
COMPANY,
           Defendant
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S FEBRUARY 13, 2018 MOTION TO DISMISS WITH PREJUDICE (DE 21) AND IMPOSE SANCTIONS FOR FAILURE TO SHOW CAUSE (DE 28)

## I.    RECOMMENDATION:

Due to repeated instances in which Plaintiff Leon Kennedy (Kennedy) and/or his counsel have failed to abide by this Court's orders and deadlines and have failed to participate in the litigation process, as explained in significantly greater detail below, this case should be dismissed pursuant to Fed. R. Civ. P. 41(b), or alternatively, under Fed. Rules Civ. P. 37(b)(2)(A), 37(c)(1)(C) and/or 37(d)(3). If the Court agrees with this recommendation, then it should, as outlined in Defendant's prayer for relief, "enter an Order dismissing Plaintiff's Complaint, with prejudice, and award Defendant costs and attorney's fees incurred for the necessity of having to bring this Motion[,]" (DE 21 at 10), not including those already addressed by the Court's March 20, 2018 order (DE 37 at 3).

1

## II.   REPORT:

### A.   Introduction

Although the Court recognizes from the outset that involuntary dismissal for failure to comply with deadlines and discovery orders and failure to prosecute the case is a harsh remedy, generally of last resort and which is rarely granted, the egregiousness of the conduct displayed here and the lack of candor displayed by Plaintiff and his counsel toward both his opponent and the Court merit dismissal in this instance.  The docket sheet in this case tells a sad and extraordinarily frustrating tale of unnecessarily wasted energy and costs engendered by a lack of participation by either Plaintiff or his counsel, repeated failures to keep the Court or defense counsel informed, admitted failure to even *read* several of this Court's orders at the time they were filed (let alone comply with them), and overall bungling legal representation.[1]  Indeed, the series of events which has transpired demonstrates that both Plaintiff and his attorneys have been "moving targets" from

---

[1] This characterization does not extend to Attorney Mark Dundon, who only appeared as Plaintiff's counsel in mid-March 2018 (DEs 33 & 35), which was after the February 23, 2018 fact discovery deadline had expired and a March 12, 2018 hearing on these matters had occurred (*see* DE 43).  It nevertheless appears that Attorney Dundon's first order of business was to violate the March 23, 2018 text-only order prohibiting the filing of any additional briefs unless requested by the Court.  However, while Plaintiff's March 27, 2018 sur-reply was electronically *signed* by attorney Dundon (oddly appearing over Attorney Quartz's name), it was electronically *filed* by Attorney Thomas Quartz, after he had withdrawn.  This filing will be addressed *infra.*

before the lawsuit was filed until after discovery had closed.  Recent efforts to

suddenly feign half-hearted (and late) compliance with this Court's discovery

orders can best be characterized as "too little, too late."

### B.    Procedural History

#### 1.    Background and initiation of litigation

This first party no-fault benefits case stems from an auto accident in which

Plaintiff was allegedly involved on July 11, 2016.  (DE 1-2 ¶ 5.)  Apparently

lacking any auto insurance of his own, Kennedy's claim was assigned to Defendant

Allstate Insurance Company (Allstate) through the Michigan Assigned Claims

Plan.  (DE 1 ¶ 6; Mich. Comp. Laws 500.3171 *et. seq.*.)[2]  Allstate denies that

Kennedy was even in the vehicle at the time of the accident, alleging instead that

he jumped into the car after the crash for the purpose of making a bogus insurance

claim.  (*See* DE 3 ¶ 5, Affirm Def. ## 6-7; DE 43 at 34-35.)  Consistent with

Defendant's theory, Plaintiff's name is not readily discernible on the State of

Michigan Traffic Crash Report as either a driver or a passenger.  (DEs 9-2, 10-2.)

Moreover, Defendant's Insured apparently claims that he never even met Plaintiff,

---

[2] *See Mich. Assigned Claims Facility v. Felski (In re Felski)*, 277 B.R. 732, 734
(2002) ("When no insurance is available to a potential PIP claimant, Michigan law
allows an injured person to make a claim through an assigned claims plan in which
the claim is placed with a participating insurance company.");  *see also* Mich.
Comp. Laws § 500.3171(1) ("A self-insurer and insurer writing insurance as
provided by this chapter in this state shall participate in the assigned claims plan.").

although Plaintiff states that the Insured is lying, because they both lived together at the Insured's address.  (DE 42 at 4.)[3]  Although this case was first filed in state court on May 15, 2017 (DE 1-2) and removed to this Court on June 12, 2017 (DE 1), Allstate has been attempting to obtain an examination under oath (EUO) from Kennedy as part of the claims adjustment process since before suit was even filed in state court.  (DE 43 at 35, 40.)

## 2.    Adherence to the Court's schedule and discovery

The state court complaint was a joint effort between attorneys Thomas Quartz and Richard Finch, the former of whom appears to have signed the first page certifying that there were no other pending or resolved civil actions arising out of the same transaction or occurrence (although this signature seems to have been initialed with "RF"), and the latter of whom signed the bottom of the complaint, over the names of both attorneys.  (DE 1-2 at 2, 5.)  On August 21, 2017, a little over two months after the case was removed to this Court, the parties filed their joint discovery plan, with Attorney Finch electronically signing as Plaintiff's representative.  (DE 6 at 9.)  The plan called for initial disclosures by September 22, 2017, witness lists and disclosure of experts by mid-December

---

[3] To be sure, this information was gleaned from Plaintiff's March 27, 2018 reply (in actuality a sur-reply or supplemental brief) (DE 42), which was filed in violation of the Court's March 23, 2018 text-only order.  However, given the Court's myriad references to Defendant's March 13, 2018 second supplement (DE 31), which exceeded the Court's March 12, 2018 direction from the bench (DE 43 at 47-51), the Court will recognize Plaintiff's improper filing.

2017, fact discovery to be completed by February 23, 2018, expert discovery to be

completed by March 23, 2018, and dispositive motions to be filed by April 27,

2018.  (DE 6 at 5-6.)  The Court accordingly issued a scheduling order on August

28, 2017, which, in all pertinent respects, adopted the dates supplied by the parties.

(DE 7.)

   Defendant claims that Plaintiff failed to make his initial disclosures, as

required by Fed. R. Civ. P. 26(a)(1), and when asked about it at the hearing, Mr.

Quartz could not say for sure, because he "wasn't handling the case at the very

beginning . . . ."  (DE 43 at 29, 46.)  Yet, in Plaintiff's most recent, post-hearing

reply brief, which is electronically signed by Attorney Dundon over both his and

Attorney Quartz's names and electronically filed by Attorney Quartz *following* his

substitution (DE 42 at 6), Plaintiff admits that "[t]he initial disclosures are clearly

late . . .[,]" and represents that they "are being filed concurrently" with the reply.

(DE 42 at 3.)  It is unclear which of the approximately 40 pages of attachments, if

any, are meant to serve as even partial initial disclosures, as most of these

attachments consist of medical releases and email strings in support of the brief

itself.  (*See* DE 42 at 7-47.)  With the exception of the accident report (which

Defendant insurer likely had long before the litigation began), there is certainly

nothing which appears to comply with Fed. R. Civ. P. 26(a)(1)'s mandate that a

party identify individuals with discoverable information, descriptions of documents

by category and location, or computation of damages.  (*See* DE 42 at 7-47.)  Of

course, it is entirely possible that Plaintiff's reference to "filing" the initial

disclosures (which would be prohibited) may have just meant "serving" them, as

required by the Rule 26(a)(1).

Little did the Court or defense counsel know that:  Plaintiff and his attorneys

would repeatedly lose contact with each other during what should have been the

active discovery period (DE 43 at 16-19); one of Plaintiff's attorneys (Finch)

would leave the firm at the end of September 2017, abandon the case and

admittedly make no effort to withdraw (DE 43 at 4-9); and, the other attorney

(Quartz) would be in Cambridge Massachusetts, studying at Harvard and otherwise

unavailable, until January 7, 2018 (DE 43 at 29-33, DE 31-1).  According to

defense counsel (and not refuted by Mr. Quartz at the hearing), an email sent to

Mr. Quartz received a bounce back message which read:

> I am currently out of the office attending Harvard until January 2018.  My
> assistant will be reading and responding to emails during this time.  If you
> have an immediate issue that can't be handled by my assistant, please contact
> my office manager Christopher Hite at chite.maapllc@gmail.com.

(DE 31-1; *see also* DE 43 at 31, DE 31 at 2.)

Apparently in conjunction with Attorney Finch's September 2017 departure

from the firm (DE 43 at 4), and notwithstanding the appearance of Thomas

Quartz's name on the first and last pages of the original complaint (DE 1-2 at 2, 5),

Attorney Quartz clarified that he would be responsible for this case by filing his own formal appearance in the federal matter on November 14, 2017 (DE 8). He confirmed that he started receiving ECF notices from the point at which his appearance was filed. (DE 43 at 18.) He now admits that he was in Cambridge at the time and remained so for the fall semester, although he explained that his secretary filed the document but acknowledged that "it's not an excuse." (DE 43 at 30-31.) Remarkably, Attorney Quartz admits that his office lost contact with its client that same month. (*Id*. at 17.) As he explained at the hearing: "I retained counsel, federal counsel, for every case in the firm except for this case. No other counsel would take this *because there was lack of contact with the client*. But going forward, we are consulting with a lawyer with more experience in Federal Court on every case." (*Id*. at 10-11 (emphasis added).) This was apparently necessary, because "there was confusion," in that, "[w]hen Mr. Finch left the case, it was transferred to another associate attorney who, unfortunately, the secretary thought was barred in Federal Court." (*Id*. at 20, 17-18.) All of this should have been of no import, however, because Attorney Quartz admittedly holds himself out as being "licensed in Federal Court[,]" and acknowledges that, at least as of March 12, 2018, he was the only attorney listed on the firm's website. (*Id*. at 10, 33.)

Yet, notwithstanding Attorney Quartz's formal appearance in this matter and his January 2018 return from Harvard, the secretary or office manager from his

firm would claim in writing to the Undersigned's case manager and defense counsel on January 26, 2018 that, "Tom Quartz does not handle any cases.  Brent Ingram [an attorney who has never filed an appearance in this matter] is the handling attorney on this case."  (DE 31-7 at 2; *see also* DE 10-5 at 3 (Oct. 25, 2017 email identifying Attorney Ingram as the "handling attorney").)  Mr. Quartz would later tell the Court, again in spite of his formal appearance as counsel of record, that "at my firm, and it's not an excuse, I'm more of an administrator. I don't litigate often."  (DE 43 at 25.)  This is seemingly contradicted by:  (a) a February 2, 2018 email from Janet Sprung to defense counsel, in which Ms. Sprung states that Mr. Quartz "is the only one [in their law firm] sworn into Federal Court[,]" (DE 31-8 at 3); and, (b) this Court's own records, which show that Mr. Quartz has appeared in five other cases in this district since 2016, at least one of which recently met a similar fate to the Undersigned's recommendation herein.[4]  Mr. Finch, who also appeared in some of these cases, for his part (and in an apparent understatement), explains that the law firm had "several organizational difficulties[,] which is one of the reasons I left . . . ."  (DE 43 at 31.)

---

[4] Case Nos. 2:16-cv-10605-SJM-MKM (*Orthopedic PC et al v. Encompass Insurance Company*), 2:16-cv-13720-SJM-SDD (*Lewo v. Great Northern Insurance Company*), 2:17-cv-13400-SJM-SDD (*Omar v. Allstate Insurance Company*), 2:17-cv-13981-RHC-RSW (*State Farm Mutual Automobile Insurance Company v. Greater Lakes Ambulatory Surgical Center, LLC d/b/a Endosurgical Center at Great Lakes*) and 4:17-cv-13196-LVP-SDD (*Smith v. Allstate Insurance Company*).

Soon after the August 2017 submission of the joint discovery plan, Defendant again sought Plaintiff's testimony, issuing notice on September 27, 2017 for a deposition to take place on October 26, 2017 at 10:00 a.m.  (DE 10-3 at 1-2.)  Defendant simultaneously served notice of its intention to take the deposition of Ronnie Kennedy, Plaintiff's apparent relative and alleged caregiver, for 1:00 p.m. on the same day.  (*Id.* at 3-4.)[5]  The cover letter which accompanied these notices, as well as interrogatories and document requests, also stated, "**Further, please advise if you are not willing to produce Mr. Ronnie Kennedy for the above deposition as soon as possible, so that I may have him served with the appropriate Subpoena.**"  (DE 10-4 (all emphases in original).)  *Two days before the depositions were scheduled to take place*, defense counsel's legal assistant reached out to Plaintiff's counsel's law firm to inquire:  "Will these depositions be going forward as scheduled?"  (DE 10-5 at 4.)  She sent another email the following day.  (DE 10-5 at 3-4.)  *One day before the depositions were supposed to take place*, October 25, 2017, Janet Sprung, who holds the titles "Legal Secretary Supervisor" and "Assistant to Brent L. Ingram, Esq.[,]" responded by email to explain that, "We can set this up – we are having issues with this case being in

---

[5] Defendant confidently refers to Ronnie Kennedy as Plaintiff's brother (DE 43 at 36), whereas Mr. Quartz is only able to confidently identify him as a caregiver or care provider and states his belief that "they are related in some manner[,]" (DE 43 at 12-13).  Although Kennedy is not the most uncommon name in the United States of America, it seems unlikely that Ronnie Kennedy's provision of attendant care services to Leon Kennedy is rendered in the course of an arm's-length transaction.

federal court . . . ." (*Id*. at 3.)  But, she assured defense counsel that, "[i]f you want to send me some dates[,] we can get it scheduled."  (*Id*.)  *Within minutes*, Defendant's counsel responded by email, requesting "new dates as quickly as possible[,]" in order to avoid having to file a motion to compel.  (DE 10-5 at 2-3.) Defense counsel also noted that signed medical authorizations were owed, that a stipulated order compelling them had been prepared, and that an appearance would need to be filed for Mr. Ingram if he planned to "appear[] on behalf of" Plaintiff. (*Id*. at 2.)  Ms. Sprung responded by email *six days later*, inviting Defendant to "send over the stip for the authorizations and the authorizations that you need signed and I will get our client in this week to sign[.]"  (*Id*. at 2.)  Defendant's attorney responded by again requesting that Mr. Ingram's appearance be filed in federal court "before we head down the path of continued discovery[,]" and stated that her side would "be happy to send over the proposed stipulation and work on dates." (*Id*. at 1-2.)  Later that day, Ms. Sprung promised to "get with Brent in the am and we will file it[,]" although this was never done.  (*Id*. at 1.)

### 3.    Non-dispositive motion practice

*Five days later*, on December 5, 2017, Defendant filed motions to compel executed authorizations and the depositions of Plaintiff and his service provider, Ronnie Kennedy.  (DEs 9 & 10.)  Attorney Quartz admits that at least one of the motions to compel was served on him electronically and that he "should have"

reviewed it, but, apparently, he did not.  (DE 43 at 18-19.)  The motions were

referred to me, and I set them for hearing on January 25, 2018.  (DEs 11-12.)

Defendant subsequently filed a motion for an order to have two of Plaintiff's

alleged healthcare providers show cause as to why they should not be found in

contempt of court for failing to respond to medical record subpoenas, which was

also referred to me and which the Court set for hearing on March 6, 2018.  (DEs

14, 15 & 17.)

Because Plaintiff never responded to either of the motions to compel, the

Court granted them as unopposed on January 22, 2018 and canceled the hearing

noticed for January 25, 2018.  (DE 16.)  Specifically, the Court ordered Plaintiff to

produce executed authorizations no later than February 1, 2018 and to be deposed

and to produce Ronnie Williams for deposition no later than February 22, 2018,

although it denied the requests for costs and attorney's fees without prejudice and

directed that the costs associated with the motions to compel may be revisited at

the hearing on the show cause order.  (DE 16 at 2-3.)  Although this order was

served on all counsel of record through the CM/ECF system, Attorney Quartz

would later admit that he did not "personally" see it "come through[,]" but,

believed he first reviewed it "a few weeks" prior to the show cause hearing.  (*See*

DE 43 at 17, March 12, 2018 hearing transcript, in which Mr. Quartz states that

"I['ve] reviewed it now, Your Honor.")

On January 25, 2018, the Court issued a text order, which read as follows:

Defendant is HEREBY ORDERED to serve copies of the pending Motion for Order to Show Cause (DE 14) and this Court's Notice of Hearing (DE 17), along with a copy of this text order, upon non-parties Rose Pain Management and Advanced Central Labs. Within 14 days of this order, Defendant shall file a Certificate of Service with the Court, certifying that service of these three items upon the non-parties has been achieved. At the hearing scheduled for March 6, 2018, Rose Pain Management and Advanced Central Labs SHALL APPEAR and SHALL SHOW CAUSE why they should not be held in contempt for failing to comply with the identified subpoenas issued by this Court. **ALL COUNSEL OF RECORD FOR PLAINTIFF SHALL likewise appear at the show cause hearing to: (a) sort out the issue of who is actually representing Plaintiff; (b) address the status of this case; and, (c) discuss Defendant's prior request for costs and attorneys fees, as addressed in the Court's previous order compelling discovery (DE at 4)[.]**

(Bolded emphasis added.) Neither of these two orders was read by Plaintiff's counsel at or near the time it was filed, and, referring to the January 22, 2018 order, Attorney Quartz later told the Court that "I – I did not review it, your Honor, and I agree that it ordered me to be here." (DE 43 at 19, 24.)

### C.    Defendant's February 13, 2018 dispositive motion

On February 13, 2018, Defendant filed the instant motion to dismiss on the basis of Plaintiff's "failure to comply with discovery, failure to comply with Court Order, failure to comply with Court Rules, and failure to prosecute his case." (DE

21 at 1.)[6]  Defendant filed its first supplemental brief in support of its dispositive

motion on February 27, 2018.  (DE 25.)[7]

### D.   Plaintiff's counsel's failure to appear on March 6, 2018

On March 5, 2018 - the day before the scheduled hearing on Defendant's

motion for an order for the healthcare providers to show cause (DE 14), Plaintiff

filed a response (DE 26).  In its March 7, 2018 post-hearing order, the Court struck

Plaintiff's response as being several weeks tardy under E.D. Mich. LR 7.1(e)(2).

(DE 27 at 2.)   Also, the Court noted: "Despite having been served with the notice

of hearing, neither Rose Pain Management nor Advanced Central Labs appeared.

Moreover, contrary to the express terms of my text-order, counsel of record for

Plaintiff did not appear."  (*Id.* at 2-3 (footnote omitted).)

---

[6] On February 14, 2018, Defendant filed a motion to adjourn all dates (DE 23), which was subsequently withdrawn (DE 32).

[7] Defendant seems to be under the mistaken impression that there is a judicial officer in the federal system called a "magistrate."  (*See* DE 36 *passim.*)  The title magistrate no longer exists in the U.S. Courts, having been changed from "magistrate" to "magistrate judge" in 1990.  Judicial Improvements Act of 1990, Pub. L. No. 101-650, §321, 104 Stat. 5089 (1990) ("After the enactment of this Act, each United States magistrate . . . shall be known as a United States magistrate judge[.]").  *See also* Ruth Dapper, *A Judge by Any Other Name? Mistitling of the United States Magistrate Judge*, 9 Fed. Cts. L. Rev. 1 (2015).  I note that the case law also sometimes uses the term "magistrate," perhaps because some cases may involve "magistrates" as defined under pertinent state law or because the case law preceded the federal statutory change, but at other times just out of carelessness in reference to federal magistrate judges.  In the latter case, it is the equivalent of calling a district judge "district," a bankruptcy judge "bankruptcy," or a circuit judge "circuit."

### E.      The March 7, 2018 show cause order

That same day, the Court issued a six-page order which remarked upon Plaintiff's counsel's failure to appear on March 6, 2018, noted the lack of an appearance by Attorney Ingram, and directed Attorneys Finch and Quartz to appear and show cause as to:

- Why they should not have to pay Defendant's costs associated with the December 5, 2017 motions to compel (DEs 9, 10);

- Why the depositions of Plaintiff and Ronnie Williams have not occurred in accordance with my January 22, 2018 order (DE 16), and consequently, why they or their client should not be sanctioned and/or held in contempt and/or why this case should not be dismissed pursuant to Fed. R. Civ. P. 37(b)(2) and/or (d)(3);

- Why attorneys Finch and Quartz should not be held in contempt for their failure to appear at the March 6, 2018 hearing (as ordered on January 25, 2018);

- Why they should not have to pay Defendant's costs for attending the March 6, 2018 hearing;

- Why this case should not be dismissed for Plaintiff's failure to prosecute.

(DE 28 at 4-5.)  That order was issued on Wednesday, March 7th, and required Plaintiff's counsel to personally appear the following Monday, March 12th.

*On Thursday March 8th*, Mr. Quartz filed a notice that he planned to take the depositions of Leon and Ronald Kennedy *on Friday, March 9th*.  (DE 29; *see also*

14

DE 31 at 6.)[8]  In other words, Mr. Quartz proposed to take the depositions of his own client and his client's brother (and/or caregiver) fifteen days *after* the previously imposed February 22, 2018 deadline, two weeks after the then-February 23, 2018 fact discovery cut-off, and on one day's notice to his sister counsel.  This was obviously not "reasonable written notice to every other party."  Fed. R. Civ. P. 30(b)(1).  *Compare*, *e.g.*, *Burket v. Hyman Lippitt*, P.C., No. CIV.A. 05-72110, 2008 WL 718180, at *2 (E.D. Mich. Mar. 14, 2008) (Majzoub, M.J.) ("Notice of a few days is too little for a deposition scheduled in a foreign country and in complex actions such as these."), *and Freeman v. City of Detroit*, No. 09-CV-13184, 2011 WL 1298174, at *2 (E.D. Mich. Apr. 5, 2011) ("the Court finds that three days['] notice for a Rule 30(b)(6) deponent and seven additional deponents is not the 'reasonable written notice' required of Fed.R.Civ.P. 30(b) (1)."), *with Smith v. Stephens*, No. 2:10-CV-13763, 2012 WL 899347, at *3 (E.D. Mich. Mar. 16, 2012) (4 days was "reasonable written notice" where Plaintiff was a prisoner and examination topics were not complicated).  When defense counsel predictably protested, Quartz persisted. (DE 31-11 (emails dated 03/08/18-03/09/18.)) Notwithstanding the deposition notice (filed under seal in violation of Local Rule 5.3(b)(1) and also stricken by the Court as prohibited discovery in violation of

---

[8] The Clerk's Office struck this from the record on the basis that it was "prohibited discovery, disclosure or a certificate of service thereof."  (*See* Mar. 8, 2018 Notice of Error.)

Local Rule 26.2 ), Attorney Quartz later explained to the Court that, in reality,

these were not *actually* going to be discovery depositions, but he was instead just

"attempting to take both their statements that they were willing to appear for a

*future* deposition, just an attempt to show the Court that we were actively *willing to*

*comply* and I wanted them to meet in person, show that they *would show up* for

deposition."  (DE 43 at 11-12 (emphases added).)

Mr. Quartz's March 9, 2018 attempt to file a written response to the March

7, 2018 show cause order just before the hearing violated several more rules and

procedures, resulting in a March 12, 2018 text order explaining that it:

> is hereby STRICKEN from the record, for the following reasons and
> those stated on the record at today's hearing, including but not limited
> to: (1) Plaintiff's counsel's lack of compliance with Local Rule 5.1 as
> to formatting and font size; (2) Plaintiff's counsel's failure to follow
> Local Rule ECF Appendix R18(b) as to the electronic filing of
> exhibits; (3) gaps in content; and (4) the failure of the alleged
> supporting affidavit(s) to comply with the rules governing what
> constitutes an affidavit or to comply with the statutory requirements
> governing declarations. See *Moore's*, *supra*.,at §56.94 2 [a]. *See, e.g.,*
> *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1305-1306 (5th Cir.
> 1988) (affidavit that was "neither sworn nor its contents stated to be
> true and correct nor stated under penalty of perjury" could not be
> considered as summary judgment proof). *See also, Demars v.*
> *O'Flynn*, 287 F. Supp.2d 230, 242-243 (W.D.N.Y. 2003); see also 28
> U.S.C. §1746. The Court further notes that the alleged interrogatory
> answers which are attached to the stricken document do not comply
> with Fed. R. Civ. P. 33(b)(3)[.]

(Italics to legal citations added).  When confronted about these deficiencies (most

of which were addressed from the bench at the March 12, 2018 hearing), and the

fact that the stricken brief appeared to have been "cut and pasted," Mr. Quartz explained that his associate (who had not filed an appearance) "wrote it for me in a hurry to comply[,]" although Mr. Quartz further explained that he "approved it." (DE 43 at 13-15.)

### F.    The March 12, 2018 hearing

Attorneys Quartz and Finch finally appeared before the Court on March 12, 2018.

#### 1.    Attorney Finch

Mr. Finch revealed that he "left Mr. Quartz'[s] firm at the end of September, 2017," and "remembered to file an update of my information or contact information with the clerk [but] neglected to file a motion to withdraw in this case." (DE 43 at 4.)  The Court confirmed that the email address on file for him through that point was correct.  (DE 43 at 6.)  Yet, when asked if he had received the Court's previous orders compelling discovery and ordering his personal appearance (January 25, 2018 Text Order; DE 28), Mr. Finch carefully answered either "I don't recall receiving that e-mail[,]" or "I don't recall receiving that notice[.]"  (DE 43 at 5-8.)   Nevertheless, he conceded that the Court could assume that he received them, since they were electronically delivered via the Court's CM-ECF system to the correct email address and had not been bounced back.  (DE 43 at 7-8.)  He then asked to formally withdraw from the case.  (*Id.* at 4, 8-9.)  The

Court made his withdrawal conditional upon paying the costs ordered (DE 37 at 4), and, once payment was confirmed (DE 39), entered an order granting Attorney Finch's subsequently filed *ex parte* motion for leave to withdraw (DE 40), which also finally terminated him as counsel of record.  (April 25, 2018 Text-Only Order.)

### 2.   Attorney Quartz

To his credit, Mr. Quartz was largely apologetic for his behavior and also conceded the necessity of having to pay the costs necessitated by it.  (DE 43 at 9, 24, 26, 33-34.)  He timely paid them when ordered to do so.  (DEs 37 & 39.)  Still, the reasons for the behavior are simply not acceptable.  In a nutshell, the record establishes, and Mr. Quartz now largely admits, that he:

- did not bother to read the December 5, 2017 motion to compel discovery or this Court's January 22 and 25, 2018 orders at the time they were filed (DE 43 at 17-20, 23-25);

- was in academia in Massachusetts for several months, during which he was counsel of record (starting in at least November 2017, when his formal appearance was filed, but his name has been on filings as early as the May 15, 2017 state court complaint) (*Id*. at 30-33, DE 8, DE 1-2);

- handed off the administration of this matter to a secretary (DE 43 at 18, 37; *see also* DE 31-1, DE 43 at 31 and DE 31 at 2);

- took his secretary's advice that he did not have to personally appear, even though he had been ordered by this Court to do so (DE 43 at 14-15; Jan. 25, 2018 text-only order; *see also* DE 34-7 at 10-11);

- was in no position to comply with the Court's January 22, 2018 order to produce his client and the caregiver for deposition until well after the required deadline (February 22, 2018) and after fact discovery had closed (February 23, 2018), since he did not have the caregiver's number until the week before the March 12, 2018 hearing and had lost contact with his client (DE 16, DE 43 at 13, 23);

- lost contact with his client for months because Leon Kennedy moved, presumably without telling his counsel (DE 43 at 13, 17, 23, 25-26; *see also* DE 34-4 (Plaintiff's Affidavit));

- did not bother to tell the Court (or, apparently, his opposing counsel) that he could not reach his client, although they "should have."  (*Id.* at 16, 19, 23, 31-32, 37.)

Meanwhile, the Court's January 22 and January 25 orders went unheeded, the discovery period closed, and the case essentially died on the vine.  Then, when Attorney Quartz finally decided to read the third of three orders requiring him to take action (*see* DE 28), he scrambled to commence what can only best be described as his own client's "pre-deposition" on one day's notice (DE 29), after the then-discovery cutoff and well after the date previously ordered.

Mr. Quartz also told the Court that he brought his client in to have "him . . . sign all the authorizations and give us interrogatories as well[,]" sometime after the Court's March 7, 2018 show cause order.  (DE 43 at 21.)  Apparently forgetting that he had told the Court this at the March 12th hearing, Mr. Quartz's March 15th response brief, and the signed authorizations which he attaches to it, make the inconsistent claim that his client had in fact signed the requested authorizations

*back on November 28, 2017* and dutifully submitted them to Records Deposition

Service (RDS) on November 29, 2017.  (DE 34 at 2, 8; DE 34-3.)  These assertions

are odd, to say the least, in light of the fact that Defendant filed a related motion to

compel on December 5, 2017 (DE 9), which then went unopposed.  (DE 34 ¶ 2,

DE 34-3.)

Unfortunately, these authorizations appear to be fraudulent or, at best,

contain the badges of fraud, for two reasons.  First, the Court cannot help but

notice, as is clear to the naked eye, that the dates on the first two of these

authorizations appear irregular, with either the entire date or the month ("11")

appearing in much heavier ink than the name and signature situated next to them.

(DE 34-3 at 2-3; *see also* DE 42 at 27.)[9]  Second, and more tellingly, each of these

authorizations, which was supposedly signed back in November, displays the

Court's own docket stamp from Page 2 or Page 4 of Docket Entry 9-4 (Pg IDs 58,

60), *as filed by Defendant without dates or signatures,* on December 5, 2017, in

support of its motion to compel discovery.  This is irrefutable evidence that these

---

[9] Yet, another irregularity becomes apparent if one compares Pg ID 534 (DE 34-3 at 2) with Pg ID 684 (DE 42 at 28), both of which Plaintiff filed as exhibits in response to Defendant's motion to dismiss and both of which bear the imprint of Pg ID 58 (DE 9-4 at 2), which was previously filed by Defendant in support of its motion to compel as an example of an *unsigned* release.  If Plaintiff's exhibits were authentic, both should look identical; yet, they do not.  Pg ID 534 bears the alleged signature date of *November* 28, 2017, in especially bold ink.  Pg ID 684 bears the signature date of *December* 28, 2017, in much lighter ink.

very documents were unsigned as of December 5, 2017.  Instead, it seems that

someone in Mr. Quartz's office simply printed them off of the electronic docket

sometime after that date – most likely just before the March 12, 2018 hearing, as

the March 15, 2018 response brief itself states that, "On March 8, 2018, Plaintiff

came . . . and signed Medical Authorizations[,]" (DE 34 ¶ 6) – and finally had the

documents signed, and, obviously, backdated.  If so, attaching them to Plaintiff's

March 15, 2018 response and/or March 27, 2018 sur-reply brief is an attempt to

defraud this Court, and it will be dealt with accordingly.[10]

### 3.    Shared responsibility

---

[10] The Court notes Plaintiff's counsel's administrative assistant's March 27, 2018
affidavit, which attempts to explain the signatures dated November 18, 2017 (*see*
DE 42 at 10-19 [one of which is dated November 19, 2017, in part]) and November
28, 2017 (*see* DE 34-3, DE 42 at 20-28 [one of which is dated December 28,
2017]).  (DE 42 at 8 ¶¶ 2-3.)  Ms. Preston also cites to a series of emails dated
March 23, 2018 and March 26, 2018 in an effort to establish that, during December
2017, RDS received the authorizations signed in November 2017.  (DE 42 at 8-9
¶¶ 4-7; DE 42 at 29-42.)  For example, there is a March 26, 2018 email from
RDS's VP and General Counsel to Ms. Preston, which allegedly attaches "the
cover letter that we received from your office with eight authorizations in
December 2017."  (DE 42 at 30, 37.)  If it were the case that these authorizations
were signed in November 2017 but never produced to Defendant (which may have
explained why Defendant's December 5, 2017 motion contained unsigned copies),
then it is unclear to this Court why Ms. Preston and/or Plaintiff's counsel did not
attach to its response and/or sur-reply authorizations executed in November 2017
which do not also bear the DE 9-4 badging.  Moreover, in filing some of these
exhibits, Plaintiff's counsel has also managed to violate the rule against exposing
his client's complete social security number in the public record. (DE 42 at 11-19
[Pg IDs 667-675]; Fed. R. Civ. P. 5.2(a)(1).)

There is fault to be shared by both client and attorneys in this case. Plaintiff's counsel now "acknowledges issues with discovery[,] largely pursuant to communication issues with [Leon] Kennedy." (DE 42 at 6.)  As Mr. Quartz explained at the hearing, "[t]he client accidently forgot to update his address and his phone number with us and due to us not having contact, we couldn't contact the client." (DE 43 at 26.)  "Contact with this client was established and lost *multiple times*" from August 2017 through March of this year. (DE 34 ¶ 1; DE 43 at 17, 13) (emphasis added).  For example, in a letter dated August 30, 2017, Plaintiff's counsel (attorney Finch) wrote to Plaintiff stating, among other things:

> After several attempts, we have been unable to contact you by phone and you have not returned to any of our letters.  Please call us within 7 days of the date of this letter.  **Failure to do so may jeopardize your auto accident case which may result in the dismissal of your case and you will be personally billed for your medical treatment.**

(DE 34-2 (emphasis in original).)  Further, as Mr. Quartz explained in his reply brief:

> On December 5, 2017, Plaintiff telephoned his attorney's office to inform them that he was homeless and that he was using his sister's address at the current time and gave an updated phone number where he could be reached. Client then gave Plaintiff's counsel the phone number of (586) 843-9436. After, December 5, 2017, Plaintiff in-advertently failed to give his attorney's office a new phone number.

(DE 34 ¶ 2; *see also* DE 34-4 [Affid. Of Leon Kennedy].)

Then, in spite of a January 22, 2018 court order requiring that Leon Kennedy be produced for deposition on or before February 22, 2018 (DE 16), Mr. Quartz avers that, "*[o]n February 14*, 2018, Plaintiff's counsel attempted to contact the Plaintiff to see if he would appear for his deposition *the following day* but was unsuccessful due to change of phone number."  (DE 34 ¶ 3) (emphases added).  In other words, after being ordered by the Court to produce Leon Kennedy for deposition within one month, it appears Mr. Quartz waited *over three weeks* to make any attempt to contact his client and then did so *only one day* before he believed the deposition was to occur.  *See* DE 25-1 (Second Re-Notice of Taking Deposition).  (And, it is not at all clear to the Court why Plaintiff's counsel even would have made that effort, when he admits to not having read the Court's January 22, 2018 order until the week before the March 12, 2018 show cause hearing.  (DE 43 at 19-20.))

Thereafter, Mr. Quartz claims that Plaintiff gave him a new phone number on February 26, 2018; yet, counsel again had difficulty reaching Plaintiff by telephone.   (DE 34 at 2-3 ¶ 4; *see also* DE 34-5.)  Plaintiff's counsel was finally able to get Plaintiff to come in and complete discovery responses on March 8, 2018, after someone from the law firm went to Plaintiff's old address and used his sister's cell phone to call him. (DE 34 at 2-3 ¶¶ 4, 6; DE 34-6 (Jonski Affid.).)  The

Court agrees with Defendant's characterization of this history as "convoluted." (DE 36 at 8.)[11]

Mr. Quartz admits that the delay is "unforgivable" and likewise lays the blame at the feet of himself and his client, explaining that, "we should have told you. Our client should also have given us contact information and we should and he should have complied with the defense's request." (DE 43 at 16-17.) Agreed. But, even when his attorneys claimed that they *did have contact with Leon Kennedy* back in November, when he supposedly signed medical authorization forms, they nevertheless failed to make him available for deposition – and put Defendant in the position of having to file the related December 5, 2017 motion (DE 10) – while Mr. Quartz was busy working on his master's degree several states away. (DE 43 at 30, 36-37; DE 10-4.) And, it is not to be forgotten that, even while Plaintiff was sporadically going "AWOL," and Mr. Quartz was filing his appearance as counsel of record while simultaneously living out-of-state as a graduate student, *Mr. Finch* was still serving as co-counsel of record (despite his alleged September 2017 departure from Mr. Quartz's law firm). Suffice it to say

---

[11] Within its March 16, 2018 filing, Defendant makes several allegations of fraud, such as: **(a)** "Mr. Quartz' representations at the March 12 show cause hearing make it clear, he and his office are perpetrating fraud upon the court[,]" **(b)** "[t]he purported authorizations signed by Mr. Kennedy on 11/28/17 and attached to Plaintiff's response are fraudulent[,]" and, **(c)** "Mr. Quartz' actions / inactions and fraud must be imputed to Mr. Kennedy under these circumstances." (DE 36 at 2, 6, 11.) In Plaintiff's ensuing March 27, 2018 sur-reply, even though improperly filed, he "adamantly denies any fraud." (DE 42 at 6.)

that there appears to be shared fault on the part of Plaintiff and his various attorneys, each of whom dropped the ball in a significant manner. This is certainly not a case where "the neglect is solely the fault of the attorney." *See Carter v. City of Memphis, Tenn.*, 636 F.2d 159, 161 (6th Cir. 1980).

## G.   Discussion

Judge O'Meara has referred this motion to me for entry of a report and recommendation. (DE 38.) Although cited somewhat differently, Defendant appears to seek dismissal of this lawsuit pursuant to Fed. R. Civ. P. 37(b)(2)(A) ("For Not Obeying a Discovery Order."). (DE 21 at 6.) In addition, Defendant relies upon Fed. R. Civ. P. 41(b) ("Involuntary Dismissal; Effect."). (*Id.*)

Dismissal under either Fed. R. Civ. P. 37(b)(2)(A)(v) or Fed. R. Civ. P. 41(b) takes into consideration the same factors. *Rogers v. City of Warren*, 302 F. App'x 371, 376 n.6 (6th Cir. 2008); *Marsh v. Rhodes*, No. 17-1211, 2017 WL 7833767, at *2 (6th Cir. Dec. 14, 2017) ("we consider the same four factors in deciding whether dismissal is warranted[.]"). *See also* 8 *Moore's Federal Practice*, § 41.52[2] (Matthew Bender 3d Ed.)

For the reasons stated below, the Undersigned concludes that these factors weigh in favor of dismissal.

### 1.    Involuntary dismissal under Rule 41(b)

Federal Rule of Civil Procedure 41(b)[12] and E.D. LR 41.2[13] authorize

involuntary dismissal for failure to prosecute or to comply with rules of procedure

or court orders. *See also Chambers v. Nasco, Inc.*, 501 U.S. 32, 49 (1991) (noting

that "a federal district court has the inherent power to dismiss a case *sua sponte* for

failure to prosecute" as recognized in *Link v. Wabash R. Co.*, 370 U.S. 626, 629-32

(1962)). "This measure is available to the district court as a tool to effect

management of its docket and avoidance of unnecessary burdens on the tax-

supported courts and opposing parties." *Knoll v. AT&T*, 176 F.3d 359, 363 (6th

Cir. 1999).

The United States Court of Appeals for the Sixth Circuit directs district

courts to consider the following factors in deciding whether to dismiss under Rule

41(b):

---

[12] "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).

[13] "Subject to Fed. R. Civ. P. 23(e) and LR 81.1, when it appears that the Court lacks subject matter jurisdiction or that the parties have taken no action for a reasonable time, the Court may, on its own motion after reasonable notice or on application of a party, enter an order dismissing or remanding the case unless good cause is shown. An application for a continuance or pending discovery may not preclude a dismissal for failure to prosecute." E.D. Mich. LR 41.2 ("Dismissal for Lack of Subject Matter Jurisdiction or Failure to Prosecute") (Mar. 02, 1998).

> (1) whether the party's failure is due to willfulness, bad faith, or fault;
> (2) whether the adversary was prejudiced by the dismissed party's
> conduct; (3) whether the dismissed party was warned that failure to
> cooperate could lead to dismissal; and (4) whether less drastic
> sanctions were imposed or considered before dismissal was ordered.

*Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir.

2008) (internal citations omitted); *see also Carpenter v. City of Flint*, 723 F.3d

700, 704 (6th Cir. 2013) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586,

589 (6th Cir. 2001)).  Although none of the factors is "'outcome dispositive... a

case is properly dismissed by the district court where there is a clear record of

delay or contumacious conduct.'"  *Schafer*, 529 F.3d at 737 (quoting *Knoll*, 176

F.3d at 363).

### a.    Willfulness, bad faith or fault

"To support a finding that a plaintiff's actions were motivated by willfulness,

bad faith, or fault under the first factor, the plaintiff's conduct 'must display either

an intent to thwart judicial proceedings or a reckless disregard for the effect of his

conduct on those proceedings.'"  *Schafer v. City of Defiance Police Dep't*, 529

F.3d 731, 737 (6th Cir. 2008) (quoting *Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643

(6th Cir. 2005).  The foregoing procedural history, as well as Plaintiff's counsel's

failure to appear on March 6, 2018, their nonchalance about the attention given to

court orders, and the lackluster explanations offered at the March 12, 2018 hearing,

all of which need not be repeated here, provide ample evidence of the requisite

"reckless disregard," *Schafer*, 529 F.3d at 737, as well as "a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363 (6th Cir. 1999) (citing *Carter,* 636 F.2d at 161). Further, Plaintiff has a responsibility to keep in touch with his attorneys. *Rogers v. City of Warren*, 302 F. App'x 371, 377 (6th Cir. 2008) ("Rogers's apparent inability to keep his counsel informed of his whereabouts and contact information demonstrates a reckless disregard for the effect that his conduct would have on the underlying case.") (citing *Schafer,* 529 F.3d at 737). Plaintiff having apparently failed to do so, and his counsel having acted as described, there is "willfulness, bad faith, or fault" to go around.

### b.   Prejudice

There is little question that Defendant was prejudiced by the conduct of Plaintiff and his counsel. As Defendant alleges in its February 13, 2018 motion, "Plaintiff's obstructionist conduct has clearly prejudiced Allstate's ability to defend against what appears to be a frivolous lawsuit[,]" in support of which it contends:

> . . . nearly five months have elapsed since discovery was opened in this case. Yet, Plaintiff has not provided ***any*** discovery whatsoever in this case. Plaintiff has not provided any answers to written discovery, produced any witnesses for depositions, including Plaintiff himself, or obeyed any of this Court's Orders. Plaintiff even prevented Allstate from taking an Examination Under Oath, despite the clear requirement listed in the Michigan Assigned Claims Plan's policies.

(DE 21 at 9 (emphasis in original).)

The Court assumes that Defendant is referencing the approximate five month period from the entry of the August 28, 2017 scheduling order (DE 7) to Defendant's filing of its February 13, 2018 motion to dismiss (DE 21), which occurred with only 10 days left in the then-fact discovery period.  While I note Plaintiff's claim that several signed authorizations were submitted to RDS in November 2017 (DE 34 ¶¶ 2; DE 34-3; DE 42 at 10-28), I doubt this claim for the reasons outlined above and further point out that just providing record releases is hardly enough participation in a case to be considered "active prosecution." Moreover, even if Plaintiff provided answers to discovery on March 9, 2018 (DE 34 ¶¶ 6-7; DE 34-7 at 12-20, DE 30 at 13-22), and even if Plaintiff's counsel appeared on March 12 as required by the March 7 order (DE 28, DE 43), and even if the March 15, 2018 email offered Plaintiff and his care provider for deposition on one day's notice (DE 34-8), it remains that these events occurred *after* the February 23, 2018 close of fact discovery (DE 7).

True, the Court could seemingly "cure" the prejudice to Defendant's ability to defend this case by extending the deadlines, an extension the parties recently initiated through the May 15, 2018 stipulated order extending discovery dates, undoubtedly due to Defendant's concern that a denial of this motion would leave Allstate "high and dry" in terms of trial preparation.  (*See* DE 45.)  However, in this case, an extension of the discovery date now – nearly three months after the

discovery deadline has passed –- is too "late to the game."  Moreover, this kind of

delay – in particular allowing discovery to end without providing it – resulted in a

waste of Defendant's and the Court's "time, money, and effort."  *Harmon v. CSX*

*Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) ("We have no doubt that CSXT

was prejudiced by Harmon's failure to respond to its interrogatories.  Not only had

CSXT been unable to secure the information requested, but it was also required to

waste time, money, and effort in pursuit of cooperation which Harmon was legally

obligated to provide."); *see also Schafer v. City of Defiance Police Dep't*, 529 F.3d

731, 737 (6th Cir. 2008) (quoting *Harmon*).  Finally, as referenced above, "[a]n

application for a continuance or pending discovery may not preclude a dismissal

for failure to prosecute."  E.D. Mich. LR 41.2 ("Dismissal for Lack of Subject

Matter Jurisdiction or Failure to Prosecute") (Mar. 02, 1998).  This is consistent

with the Court's consideration of "whether the adversary was prejudiced" in

deciding whether to involuntarily dismiss a case, *i.e.*, whether the adversary has

suffered *any* or *some* prejudice.  *Schafer*, 529 F.3d at 737.  This factor is not

modified by a requirement of "complete incurability."[14]

---

[14] Moreover, this behavior occurs in the context of a case which appears to have
some significant, and possibly fatal, weaknesses on the merits, given the seeming
absence of Plaintiff's name on the traffic crash report (DEs 9-2, 10-2) and the
dispute over whether Defendant's insured and Plaintiff know each other (DE 42 at
4); thus, Plaintiff's case seems anemic, at best.  *Okafor v. Statebridge Co. LLC*,
113 F. Supp. 3d 430, 431 (D. Mass. 2015) ("Due to counsel's repeated tardiness,
[Plaintiff]'s delinquence regarding his discovery obligations, and the weakness of

### c.   Warning

It may be the case that Plaintiff was not *expressly* warned, at the time of the Court's January 22, 2018 (DE 16), January 25 (text-only) or March 7 (DE 27) orders, "that failure to cooperate could lead to dismissal[.]"  *Schafer*, 529 F.3d at 737 (quoting *Knoll*, 176 F.3d at 363).  However, "[e]xpress notice may not be required when the plaintiff or plaintiff's counsel was clearly put on notice from the circumstances that dismissal was likely."  8 *Moore's Federal Practice*, § 41.51[3][e] (Matthew Bender 3d Ed.).  *See Link*, 370 U.S. at 632 ("The adequacy of notice and hearing respecting proceedings that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct.").  The above history certainly evidences that "the writing was on the wall."

Moreover, the Court's March 7, 2018 show cause order requiring Plaintiff's counsel of record – then attorneys Finch and Quartz - to show cause sought answers to the following questions, among others:

- Why the depositions of Plaintiff and Ronnie Williams have not occurred in accordance with my January 22, 2018 order (DE 16), and consequently, why they or their client should not be sanctioned and/or held in contempt and/or why this case should not be dismissed pursuant to Fed. R. Civ. P. 37(b)(2) and/or (d)(3);

---

his allegations on the merits, all claims against the defendants are ***DISMISSED*** with prejudice based on failure to prosecute pursuant to Fed.R.Civ.P. 41(b).") (emphasis in original).

- Why this case *should not be dismissed* for Plaintiff's failure to prosecute.

(DE 28 at 5) (emphasis added).  Counsel was confronted with these questions at the March 12, 2018 hearing.  (*See*, *e.g.*, DE 43 at 16, 25-26, 28; *see also* DE 43 at 40, 45.)  The explanations were not impressive.

Finally, Attorney Quartz's difficulty in this case is not an isolated incident for him or his law firm.  *See*, *e.g.*, *Meds Direct Pharmacy, et al. v. Allstate Insurance Company*, Case No. 17-002677-NF (Wayne County Circuit Court) (orders compelling deposition and warning that a failure to comply would result in dismissal with prejudice (DE 31-9 at 71-72) and granting defendant's motion for sanctions and motion to dismiss for failure to comply with court order (DE 31-9 at 78, 84)), *Smith v. Allstate Insurance Company*,  4:17-cv-13196-LVP-SDD (DE 24 therein at 4-5, May 11, 2018 order and opinion granting defendant's motion to dismiss, finding "that Plaintiff repeatedly has engaged in conduct intended to thwart these proceedings or in reckless disregard of the effect on these proceedings[,]" and concluding that "the relevant factors support dismissal of this lawsuit for failure to prosecute."), and *Lewo v. Great Northern Insurance Company*, Case No. 2:16-cv-13720-SJM-SDD (although the case was ultimately terminated by a stipulated order of dismissal with prejudice and without costs, Defendant's motion to dismiss for failure to prosecute or to compel executed

authorizations was followed by an order, which provided, in part, that "Plaintiff will be permitted one last opportunity to justify her inaction; if she does not, the Court will dismiss the case with prejudice."). In fact, although *Lewo* was eventually closed as the result of a stipulated order of dismissal, both Quartz and Finch were attorneys of record in that case at the time of Defendant Great Northern Insurance Company's motion to dismiss for failure to prosecute or to compel executed authorizations. Thus, neither attorney could have been surprised that similar relief has been sought here.

### d.      Less drastic sanctions

Finally, the Court should consider "whether less drastic sanctions were imposed or considered before dismissal was ordered." *Schafer*, 529 F.3d at 737 (quoting *Knoll*, 176 F.3d at 363). The Court has made at least two attempts to avoid the current status of this case, namely:

**(1)**      when Plaintiff did not respond to Defendant's motions to compel, they were granted as unopposed (DE 16); and,

**(2)**      on January 25, 2018 the Court ordered Plaintiff's counsel of record to appear on March 6, 2018 "to: (a) sort out the issue of who is actually representing Plaintiff; (b) address the status of this case; and, (c) discuss Defendant's prior request for costs and attorneys fees, as addressed in the Court's previous order compelling discovery[,]" yet counsel did not appear on that date.

Thus, even though Plaintiff's counsel responded to the March 7, 2018 show cause order by finally appearing on March 12, 2018, and payment was made in

accordance with the Court's March 20, 2018 order, following which attorney Finch
made a formal motion for withdrawal, it is still the case that counsel let fact
discovery come and go on February 23, 2018 without providing initial disclosures
or responding to discovery requests – presumably those which had been served on
September 27, 2017 – even if he eventually signed them on March 8, 2018 (DE 42
at 3, DE 43 at 21, DE 21-6, DE 30 at 13-22), lost contact with their client
repeatedly, failed to provide him for deposition at any time during the fact
discovery period (then concluding on February 23, 2018), did not timely read or
follow court orders, did not show up for court on March 6, 2018, and essentially
had no attorney available to handle this case from the end of September 2017 to
January 7, 2018 (DE 43 at 4, 33).  This history makes it difficult to fathom an
alternative sanction that will "protect the integrity of pre-trial procedures" and
prevent flagrant violation of the Court's orders and rules in the future.  *See*, *e.g.*,
*Carter*, 636 F.2d at 161 ("The sanction of dismissal is appropriate only if the
attorney's dilatory actions amounted to failure to prosecute and no alternative
sanction would protect the integrity of pre-trial procedures.") (citing *J. F. Edwards
Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318 (7th Cir. 1976)
(per curiam)).

Since the Court conducted its March 12, 2018 show cause hearing, Attorney
Dundon has appeared "in the place, and instead of" Attorney Quartz (DE 35), and I

have granting Attorney Finch's motion for withdrawal (DE 40; April 25, 2018

Text-Only Order).  Still, even to the extent I recommend dismissal of this lawsuit

based upon Plaintiff's former counsel's "unexcused conduct," this approach does

not impose "an unjust penalty" on Plaintiff.  *Link*, 370 U.S. at 633 ("There is

certainly no merit to the contention that dismissal of petitioner's claim because of

his counsel's unexcused conduct imposes an unjust penalty on the client.").  In the

Supreme Court's own words, Plaintiff "voluntarily chose this attorney as his

representative in the action, and he cannot now avoid the consequences of the acts

or omissions of this freely selected agent.  Any other notion would be wholly

inconsistent with our system of representative litigation . . . ."  *Id.* at 633–634.[15]

Plaintiff relies upon *Mulbah*, wherein the Sixth Circuit acknowledges its

"extreme reluctance to uphold the dismissal of a case merely to discipline a party's

attorney[,]" and its increasing emphasis to "directly sanction[] the delinquent

lawyer rather than an innocent client."  *Mulbah*, 261 F.3d at 590-591 (internal

quotations and external citations omitted).  (DE 42 at 5.)  However, unlike in

---

[15] Plaintiff "has not necessarily forfeited his 'day in court' solely by reason of his lawyer's misconduct, when [he] has a legal basis to initiate an action for professional malpractice against his willfully dilatory counsel."  *Sexton v. Uniroyal Chem. Co.*, 62 F. App'x 615, 621 (6th Cir. 2003)  *See also Farzana K. v. Indiana Dep't of Educ.*, 473 F.3d 703, 706 (7th Cir. 2007) ("If counsel blundered to his client's prejudice, the remedy is malpractice litigation against the culprit, not the continuation of litigation against an adversary who played no role in the error."); *Searcy v. Cty. of Oakland*, 735 F. Supp. 2d 759, 767 (E.D. Mich. 2010) (citing *Farzana K.*).

35

*Mulbah,* it is *not* the case here that "there was no significant delay involved[,]" or that "the record reveals no instance in which Plaintiff or his counsel missed an actual court appearance." *Mulbah*, 261 F.3d at 591-592.  Thus, *Mulbah* is distinguishable.

Instead, there is sufficient circuit case law to support dismissal under the circumstances present in the instant case.  *See Knoll*, 176 F.3d at 360, 364 (affirming district court's Rule 41(b) dismissal where "counsel neglected plaintiff's case, repeatedly ignored court orders without excuse, and ultimately attempted to force the court to grant a continuance by refusing to proceed on the day of trial[,]" and where Plaintiff was "inexcusably unprepared to prosecute the case[.]"); *Harmon*, 110 F.3d at 365, 368 (affirming the district court's dismissal of Plaintiff's complaint for failure to prosecute and to comply with a court order where "Harmon failed to respond to the amicable requests of CSXT's counsel," "failed to respond to CSXT's motion to compel," and "failed to comply with the district court's November 2, 1995, order[,]" as well as "failed to respond to the motion to dismiss, even after the district court was gracious enough to grant him an extension of time[,]" all of which the Court found "to establish that Harmon's counsel was stubbornly disobedient and willfully contemptuous."); and, *Coston v. Detroit Edison Co.*, 789 F.2d 377, 379 (6th Cir. 1986) (in affirming district court's dismissal of Plaintiff's case, the Court noted that "[t]he plaintiff's problem here

was his chosen attorney's failure to appear on repeated occasions under circumstances deemed unacceptable to the court, not mere dilatory conduct involving a failure to file a specified document.").

### 2.      Fed. R. Civ. P. 37

While Fed. R. Civ. P. 41(b) was the thrust of Defendant's argument, its other basis for dismissal was a Fed. R. Civ. P. 37(b)(2)(A) discovery sanction for failure to obey a discovery order.  (*See* DE 21 at 1, 6.)  Frankly, Rule 37(c) ("Failure to Disclose, to Supplement an Earlier Response, or to Admit.") or Rule 37(d) ("Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.") would also appear to be applicable, each of which provides for the imposition of sanctions listed in Rule 37(b)(2)(A), including dismissal.  *See* Fed. Rules Civ. P. 37(c)(1)(C), 37(d)(3).

As outlined in the previous sections, Plaintiff and/or his counsel:   (a) ignored court orders; (b) did not timely (if ever) provide initial disclosures, which the parties had proposed exchanging on September 22, 2017 (DE 6 at 5, DE 42 at 3); (c) did not timely produce deponents, which the Court had ordered to occur no later than February 22, 2018 (DE 16 at 3); and, (4) did not timely answer or respond to discovery requests – presumably those which had been served on September 27, 2017 (DE 21-6, DE 43 at 21).  *See Bass v. Jostens, Inc.*, 71 F.3d 237, 243 (6th Cir. 1995) ("the district court's dismissal order was an appropriate

final sanction for plaintiff's repeated and willful refusals to cooperate in discovery.").

The district court does not abuse its discretion "by ordering dismissal as the first and only sanction[,]" where there is "sufficiently egregious conduct[.]" *Harmon*, 110 F.3d at 369; *see also Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013) ("There is no magic-words prerequisite to dismissal under Rule 37(b)[.]"). Therefore, even if the Court disagreed with the foregoing recommendation that this case should be dismissed in accordance with Fed. R. Civ. P. 41(b), the Court has at least three other bases upon which to penalize Plaintiff and his counsel for their conduct, while also deterring those considering such conduct in the future. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) ("the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."); *see also Taylor v. Medtronics, Inc.*, 861 F.2d 980, 986 (6th Cir. 1988). Furthermore, dismissal under Fed. R. Civ. P. 37(b)(2)(A)(v) may be done independently of Fed. R. Civ. P. 41(b). "[W]hether a court has power to dismiss a complaint because of noncompliance with a production order depends exclusively upon Rule 37, which addresses itself with particularity to the consequences of a

38

failure to make discovery by listing a variety of remedies which a court may employ as well as by authorizing any order which is 'just.' There is no need to resort to Rule 41(b) . . . ." *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 207 (1958).

### H.   Conclusion

"[T]he court may dismiss an action when the delays or omissions are repeated or of long duration, and conduct resulting in a relatively short period of delay may still warrant dismissal when it is part of a deliberate pattern of intransigence." 8 *Moore's Federal Practice*, § 41.51[3][a] (Matthew Bender 3d Ed.).  Such is warranted here, where Plaintiff and his counsel have been repeatedly absent to their own party, at most making only cameo appearances.

In sum, for the reasons set forth above, this case should be dismissed pursuant to Fed. R. Civ. P. 41(b).  Alternatively, the Court can reach the same conclusion under Fed. Rules Civ. P. 37(b)(2)(A), 37(c)(1)(C) and/or 37(d)(3).  If the Court agrees with this recommendation, then it should, as outlined in Defendant's prayer for relief, "enter an Order dismissing Plaintiff's Complaint, with prejudice, and award Defendant costs and attorney's fees incurred for the necessity of having to bring this Motion[,]" (DE 21 at 10), which would be separate and apart from those already awarded by the Court's March 20, 2018 order in connection with the December 5, 2017 motions to compel, the non-

appearance at the March 6, 2018 status conference, and the March 12, 2018 show

cause hearing.  (DE 37 at 3.)

Finally, there is the issue of sanctions.  Plaintiff's counsel failed to abide by

the Court's January 25, 2018 text-only order, as Plaintiff's then-attorneys of record

did not appear at the March 6, 2018 hearing and, thus, did not answer the noticed

questions.  Then, my March 7, 2018 order required Plaintiff's counsel of record to

show cause as to several items (DE 28 at 4-5), and, as can be seen from the

transcript of the March 12, 2018 show cause hearing (DE 43), they did not do so.

Given that my March 20, 2018 order held in abeyance several issues in the show

cause order until such time as the Court rules upon the instant motion to dismiss

(*see* DE 37 at 4), and given the Undersigned's recommendation to grant the

dispositive relief Defendant seeks, I now recommend the imposition of sanctions

(beyond the dismissal of this case, the costs imposed on March 20, 2018, and any

costs the Court assesses against Plaintiff in conjunction with Defendant's instant

motion to dismiss), and in accordance with the Court's inherent authority, against

Plaintiff's former counsel, Thomas Quartz in the form of:  (1) a $7,500.00 fine (to

be paid to the Clerk of this Court); and, (2) a requirement that he certify and attach

proof of his attendance at the E.D. Mich. Chapter of the Federal Bar Association's

next seminar for new attorneys, held annually in this Court each December,[16]

---

[16] *See* https://fbamich.org/committees/new-lawyer-seminar/

before he may appear in any additional cases before this Court.  (*See* DE 43 at 11, wherein he acknowledges having not attended an annual seminar).  As Attorney Quartz is no longer counsel of record in this case, a copy of this Report and Recommendation will be served upon him by mail.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: May 23, 2018                    s/Anthony P. Patti
                                       Anthony P. Patti
                                       UNITED STATES MAGISTRATE JUDGE


### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record
on May 23, 2018, electronically and/or by U.S. Mail.

                                       s/Michael Williams
                                       Case Manager for the
                                       Honorable Anthony P. Patti